[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11925

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RAY ANTONIO MANUEL, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:20-cr-00057-MCR-1

_____

Before ROSENBAUM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Ray Manuel, Jr., appeals the substantive reasonableness of his 120-month sentence for possession of a firearm by a convicted felon. Manuel argues that the District Court did not properly weigh his mental illness, troubled childhood, or history of substance abuse in mitigation when determining his sentence. He asserts that the District Court improperly relied on a single 18 U.S.C. § 3553(a) sentencing factor, "the safety of the public," in reaching its 120-month sentence. As we find that his sentence is substantially reasonable, we affirm the District Court's sentence.

## I.[1]

### A.

On February 18, 2020, deputies from the Escambia County, Florida, Sheriff's Office ("ESCO") responded to a call about reported gunshots within a residential neighborhood. A video recording showed a maroon four-door sedan with a tan top approaching the neighborhood, someone in the car firing eight to ten gunshots, and the driver subsequently speeding away. Deputies found 9mm bullet casings at the scene.

Exactly one month later, an ESCO deputy attempted to perform a traffic stop on Manuel after seeing that Manuel's car

---

[1] The following facts are taken from the presentencing investigation report.

matched the description of the car from the drive-by shooting. After the deputy activated his patrol lights, Manuel led the deputy on a high-speed chase and drove through several stop signs and red lights. Eventually, the deputy was able to disable Manuel's vehicle, and Manuel fled the vehicle on foot. Manuel left behind his jacket that contained his cell phone and casino card, both of which later helped law enforcement identify him. The passenger in the car stated that Manuel had reached underneath the driver's seat to grab a black handgun after the deputy disabled his car. This handgun, a black, semiautomatic P89 9mm handgun, was found on the ground just outside the driver-side door of Manuel's car.

Deputies found seven shell casings and further identification of Manuel in his trunk. Manuel's phone indicated that he made two calls the night of the drive-by shooting in the area where the shooting took place. At the time of this incident, Manuel was a convicted felon and had not had his right to own or possess a firearm restored.

Consequently, a federal grand jury charged Manuel with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2). Manuel pled guilty pursuant to a written plea agreement. The District Court accepted the guilty plea, which is not challenged on appeal.

*B.*

When preparing the presentencing investigation report ("PSI"), the probation officer initially calculated a base offense level of 22, pursuant to U.S.S.G. § 2G1.3(a)(3), because the firearm that Manuel possessed was loaded with an extended magazine and he had previously been convicted of a controlled substance offense.  The probation officer applied an additional (1) 4 levels, pursuant to U.S.S.G. § 2K2.1(b)(6)(B), because Manuel used or possessed a firearm in connection with another felony offense, specifically, the drive-by shooting; (2) 2 levels, pursuant to U.S.S.G. § 3C1.1, because Manuel falsely denied being the driver of the vehicle and having dropped the firearm at his plea colloquy; and (3) 2 levels, pursuant to U.S.S.G. § 3C1.2, because Manuel recklessly caused a substantial risk of death or serious bodily injury while fleeing law enforcement.  Manuel's total offense level was therefore 30.

The PSI discussed Manuel's previous criminal history, including 15 adult arrests resulting in 20 total convictions for trespassing, possession of marijuana, driving without a valid license, battery, possession or use of drug equipment, driving with a suspended license, possession of cocaine, resisting arrest, tampering with evidence, assaulting with intent or threat to commit violence, intent to sell or deliver a controlled substance, and dealing in stolen property.  Manuel's total criminal history score was 17, which placed him in criminal history category VI.

Based on his total offense level of 30 and criminal history category VI, Manuel's guideline range was 168 to 210 months. However, the guideline term became 120 months under § 5G1.1(c)(1) based on the 120-month statutory maximum term. The probation officer noted factors that may warrant a sentence outside the guideline range, including that Manuel was exposed to violence and drug use at an early age, his parents did not play an active role in raising him, his grandmother raised him until he was 13 years old, he was enrolled in special education classes in high school, and he was diagnosed with behavioral and learning disabilities during his childhood.

Manuel filed objections to the PSI. As a result of these objections, the probation officer revised the PSI to adopt some of the changes requested by Manuel by removing the 2-level obstruction-of-justice enhancement and adding a 3-level acceptance-of-responsibility reduction, which resulted in a new total offense level of 25. Under the revised PSI, Manuel's revised guideline range for a total offense level of 25 and a criminal history category of VI was 110 to 137 months. This range became 110 to 120 months because Manuel's statutory maximum was 120 months.

Prior to sentencing, the government argued that Manuel should receive the statutory maximum of 120 months' imprisonment based on his conduct and criminal history. The government stressed that Manuel had a pattern of violence and firearm possession that was not sufficiently accounted for in his scored criminal history.

Manuel responded, reemphasizing the same childhood and mental-health conditions discussed in the PSI to mitigate his sentence. Manuel added that he was diagnosed with Unspecified Depressive Disorder and Unspecified Mood Affective Disorder and had to support 12 minor children. Manuel requested the District Court to impose a reasonable, but not greater than necessary, sentence.

At sentencing, the District Court noted that it had reviewed Manuel's and the government's sentencing memos. Manuel conceded that the offense level of 25 was appropriate. Manuel argued that his criminal history category should be reduced because several of his criminal convictions should have been scored as one conviction. The District Court overruled his objection, noting that there were intervening arrests between the scored convictions.

The government submitted evidence from the scene of the drive-by shooting and when Manuel fled from his vehicle that the government claimed showed that Manuel was the person who committed the shooting. Next, in mitigation, Manuel expressed that he was diagnosed with bipolar disorder and had symptoms of schizophrenia, which the District Court expressly noted. Manuel argued for a sentence less than the guideline range because he had "a long, undiagnosed and untreated mental illness of depression, bipolar depression, and symptoms of schizophrenia." Manuel explained that his father abandoned him as an infant, his mother was addicted to drugs, and he lived with his grandmother, who

ultimately died of cancer when he was 13 years of age.  Manuel noted that he was surrounded by poverty and violence during his childhood.  Manuel explained that although he had various undiagnosed mental-health conditions for some time, he was now receiving treatment and medication for the illnesses.  He also mentioned he had glaucoma in his retinal nerve and would turn blind if he did not get treatment.  Manuel read a self-written letter to the Court where he reemphasized the above considerations, his community service efforts, and his children.  Manuel ultimately asked the District Court to consider all the above factors and balance them against the offense conduct when determining an appropriate sentence.

The government suggested the District Court give great weight to the following § 3553(a) factors: (a) the circumstances of the offense, (b) the history and characteristics of Manuel, (c) the seriousness of the offense, and (d) protection of the public.  The government argued that Manuel had the firearm in his possession during a dangerous high-speed chase and likely used the same firearm in the drive-by shooting a month prior.  The government noted that during the chase, Manuel was also putting the life of his passenger in danger.  The government noted that Manuel pulled out the handgun and put it in his lap, suggesting that he planned on using the firearm.  It also emphasized that Manuel had committed similar violent offenses before and was well above the minimum criminal history score needed for criminal history category VI.  The government noted that Manuel's criminal history

classification did not account for several past violent offenses, including yelling and throwing a bottle at a woman, hitting a woman, jumping his roommate, hitting and pointing a gun at one of the mothers of his children, fleeing authorities while in possession of a firearm, breaking into his mother's home while in possession of a firearm, and hitting a man with a bat. The government also noted that Manuel had previously been arrested seven times for various offenses. The government argued that Manuel's difficult upbringing and mental health issues did not excuse his continual criminal conduct. The government concluded that a 120-month sentence was appropriate under the § 3553(a) factors.

In imposing Manuel's sentence, the District Court stated, "Mr. Manuel, the trauma that you suffered as a child is significant, it's notable." But the Court expressed, "[T]here's no basis at all on which I could go lower on a Guidelines range, none. And there's any number of reasons, all of which [the government] just outlined, that would support an enhanced sentence in your case." It noted that it would have considered going above 120 months if it could have because the "violence is just replete." The Court noted that there are many reasons why people behave the way they do, which may include mental illness and childhood trauma. The Court continued,

> But what it all boils down to for me or any other judge is the impact of that on the safety of the public. And here, there is just far too much for me to ignore or to try to, you know, explain by virtue of

21-11925                Opinion of the Court                9

> mental illness or trauma.  It may be explained by
> that, but it doesn't mitigate it when it's so serious
> and so repetitive.

The Court mentioned Manuel's high number of previous charged and uncharged offenses as a concern for Manuel's propensity to commit violence.  It expressed that it was concerned that the high-speed chase was dangerous and only ended because the deputy was able to disable Manuel's vehicle.  It further noted that the danger was amplified when Manuel pulled out his handgun in response to the deputy turning his sirens on.  The Court indicated Manuel had previously fled authorities while in possession of a firearm.  The Court noted that the 120-month sentence was within the guideline range and that a 120-month maximum penalty for the crime likely prevented the sentence from being longer than it otherwise may have been.  The Court imposed a 120-month sentence, explaining that "under all of the factors in 3553(a), it is a just sentence and one that is appropriate based upon the nature and circumstances of the offenses that are charged in this case as well as including uncharged conduct, relevant conduct, and [Manuel's] personal history and characteristics."

## II.

We review the reasonableness of a sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).

We will measure substantive reasonableness by considering the totality of the circumstances and whether the sentence achieves the sentencing purposes stated in § 3553(a). *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009). We will only vacate a defendant's sentence as unreasonable if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Overstreet*, 713 F.3d 627, 637 (11th Cir. 2013) (quoting *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009)).

The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court. *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). We will not second guess the weight that the district court gave to a § 3553(a) factor so long as the sentence is reasonable in light of all the circumstances. *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008). In fact, a district court is permitted to attach great weight to one § 3553(a) factor over others. *Overstreet*, 713 F.3d at 638. However, "a district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*).

## III.

Here, Manuel's sentence was substantively reasonable. As the record clearly shows, the District Court carefully considered all the relevant factors, not just public safety. These factors included the circumstances of the offense, the seriousness of the offense, Manuel's prior charged and uncharged criminal conduct, and the protection of the public. The District Court did not abuse its discretion in imposing a within-guidelines sentence of 120 months' imprisonment after considering the mitigating factors presented by Manuel but giving greater weight to the aggravating factors of his violent criminal history and offense conduct that involved fleeing from the police with a firearm. Therefore, we affirm.

**AFFIRMED.**